IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| James Mingo,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Northrop Grumman Ship Systems, Inc.,<br><br>　　　　　Defendant. | No. 1:06-cv-00805-LG-RHW<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**<br><br>(Civil Rights-Employment)<br><br>Jury Trial Demanded |

## **PRELIMINARY STATEMENT**

　　1.   This action seeks injunctive and declaratory relief to prevent continuing, systemic, and unjustified race discrimination by the employer, NORTHROP GRUMMAN SHIP SYSTEMS, INC. ("NGSS"), with regard to the retention, terms and conditions of employment, treatment, and promotion and transfer of Black employees at NGSS, including severe, pervasive, and ongoing harassment of Black employees through longstanding maintenance of a racially hostile work environment.  In addition to injunctive and declaratory relief, and all other available equitable relief, plaintiff seeks compensatory and punitive damages.

## **JURISDICTION**

　　2.   This suit is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"); and Civil Rights Act of 1866, 42 U.S.C. § 1981 ("1981").  Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. §§ l343 (3)&(4); 28 U.S.C. § 1331 and 28 U.S.C. § 1337.  Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 & 2202.

Plaintiff James Mingo's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00805-LG-RHW

1

## PARTIES

3. James Mingo is a Black employee of NGSS who has been employed by NGSS for over 32 years.

4. NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a business that is engaged in the construction and refurbishing of seagoing vessels, both military and civilian.  It is located in Pascagoula, Mississippi.  It is an employer for purposes of Title VII.  On the basis of information and belief, plaintiff alleges that NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a successor in interest to INGALLS SHIPBUILDING COMPANY.

5. NGSS has received numerous contracts and substantial income from agencies and departments of the Federal Government, and because of the receipt of said contracts and income it is subject to Title VI of the Civil Rights Act of 1964, as amended.  NORTHROP GRUMMAN SHIP SYSTEMS, INC., and its predecessor, INGALLS SHIPBUILDING COMPANY, therefore are, and have been, a federal contractor at all times relevant.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. All conditions precedent to jurisdiction pursuant to section 706 of Title VII of the Civil Rights Act of 1964, as amended, have been complied with to wit:  an appropriate charge of employment discrimination has been filed with the Equal Employment Opportunity Commission, and a notice of right to sue was issued by the Equal Employment Opportunity Commission.

7. Plaintiff has filed a timely complaint based on the time limits contained in section 706 of Title VII of the Civil Rights Act of 1964, as amended.

8. On or about December 20, 2000, the Equal Employment Opportunity Commission issued a determination finding reasonable cause to believe that a racially hostile work environment existed at NGSS.

9. Attempts at conciliation regarding the finding of a racially hostile work environment, which was and is statutorily required, failed.

Plaintiff James Mingo's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00805-LG-RHW

2

## PROCEDURAL BACKGROUND PRECEDING THIS COMPLAINT

10. An initial complaint was filed in the United States District Court for the Southern District of Mississippi on March 21, 2001, in which eleven (11) persons, named as representative plaintiffs, and the organization, Ingalls Workers for Justice, alleged class-wide discrimination at NGSS on the basis of race. The case was assigned a case number of 1:01-CV-111(G)(R).

11. A First Amended Complaint was filed on April 26, 2001 in the initial case, additionally alleging maintenance of a racially hostile work environment at NGSS.

12. A Complaint in Intervention was filed on February 13, 2003 in the initial case, necessitated by the Court's dismissal of the following causes of action and parties from the First Amended Complaint on February 28, 2002:

   a) Dismissal of the class action allegations seeking compensatory and punitive damages;

   b) Dismissal of the claim for relief alleged pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*;

   c) Dismissal of the claim for relief alleged pursuant to the Thirteenth Amendment to the U.S. Constitution;

   d) Dismissal of organizational plaintiff INGALLS WORKERS FOR JUSTICE;

   e) Dismissal of defendant LITTON INDUSTRIES; and

   f) Dismissal of defendant NORTHROP GRUMMAN.

13. A Second Amended Complaint was filed on April 7, 2003 in the initial case.

14. On or about March 16, 2004, the initial case was reassigned to the Honorable Louis Guirola, Jr., District Court Judge; on December 30, 2004, the Honorable Robert H. Walker, Magistrate Judge, was assigned to be the Magistrate Judge for the initial case.

15. On August 17, 2006, Magistrate Judge Walker entered an order entitled, "Order Requiring Separate Complaints," which, *inter alia*, severed the plaintiffs' claims from one another, and required the filing of new complaints and assignment of new case numbers for each of the individual plaintiffs in Case No. 1:01-CV-111(LG)(RHW).

Plaintiff James Mingo's Complaint for                                                                                              3
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00805-LG-RHW

16. At some point during the period of time from August 17, 2006 through September 7, 2006, Plaintiff James Mingo's severed action was assigned the case number of 1:06-cv-00805-LG-RHW.

## FACTUAL STATEMENT
## RACIAL DISCRIMINATION GENERAL ALLEGATIONS

17. The defendant, NGSS, has intentionally pursued and continues to pursue employment policies and practices that constitute systemic discrimination against plaintiff and other Black employees and that deprive or tend to deprive such persons of equal employment opportunities within NGSS.  NGSS has intentionally implemented these policies and practices, among other ways, as follows:

   a) By failing to treat Blacks on an equal basis with Whites.

   b) By using selection devices for promotions that have an adverse impact on Blacks, are not job related and have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures, and have more adverse impact than equally valid alternatives.

   c) By using evaluation procedures in the consideration of employees for promotions that discriminate against or illegally exclude Black employees from consideration.

   d) By failing to provide Black employees with equal opportunities for advancement within the company because of their race.  Black employees are denied promotions despite their qualifications and years on the job.  It is not uncommon for a Black employee to be denied a promotion at NGSS in an area she or he has worked in for twenty years and then be assigned to train a White employee with less seniority.

   e) By maintaining a double standard in the granting of promotions to White employees vis à vis Black employees.  Practices including cronyism, nepotism, word-of-mouth recruitment, failure to post or advertise employment opportunities, and/or the placement of White employees in acting positions have

Plaintiff James Mingo's Complaint for                                                                                          4
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00805-LG-RHW

    inured to the determent of Black employees historically.

  f) By restricting access to employment opportunities for Black employees and maintaining a workforce in which its supervisory and management personnel has been and continues to be predominately White.

  g) By engaging in a policy in which positions are actually filled even before they may be posted or advertised as an available position.

  h) By demoting Black employees at a disproportionate rate as compared to White employees.

  i) By retaliating against Black employees after they have complained or challenged, in any way, the discriminatory policies, procedures, and practices that permeate the work environment at NGSS.

  j) By denying Black employees opportunities to go on trips or sea trials where they would be able to earn substantial amounts of overtime.

  k) By maintaining a practice of "job steering," resulting in Black employees being assigned to, and then denied the opportunity to move out of, dangerous, dirty, and generally less desirable work areas because of their race.

  l) By instituting and allowing the continuance of a racially hostile work environment for Black employees.

 18. This pattern or practice denies the full exercise of rights secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

 19. NGSS has been aware that its actions with regard to the treatment of Black employees were and are in violation of federal statutes prohibiting discrimination on the basis of race.

## SPECIFIC CLAIMS FOR RELIEF

## TITLE VII AND § 1981

Plaintiff James Mingo's Complaint for  
Injunctive and Declaratory Relief and Damages  
No. 1:06-cv-00805-LG-RHW

5

20. Plaintiff incorporates paragraphs 1 through 19, as though fully set forth herein.

21. Plaintiff has worked for over 34 years in one or more of the departments at NGSS utilizing a position entitled "leaderman" or "half-hat." Based upon information and belief, plaintiff hereby alleges that no formal means of applying for the position of "leaderman" or "half-hat" at NGSS exist. Plaintiff has made it known that he has been interested in being selected for the position of "leaderman" or "half-hat," since the early 1990's. Plaintiff has not been informed in any way that he was not qualified for the position of "leaderman" or "half-hat." Plaintiff had demonstrated his supervisory qualifications when he served as work leaderman for over five years from July 8, 1974 to October 18, 1979, and from December 10, 1979 to February 18, 1980, and from May 1, 1980 to November 3, 1980, as Supervisor for nearly two years from November 3, 1980 to October 18, 1982, and again as leaderman for nearly five more years from October 18, 1982 to June 15, 1987. Since 1987, Plaintiff has expressed interest in holding the position of leaderman, but has not been selected. In the early 1990's Plaintiff complained verbally several times to Tommy Trawick, a White Foreman, when Mr. Trawick was passing over Black employees for work leaderman positions. Mr. Trawick told Plaintiff that he would transfer Plaintiff to a work crew that needed a work leaderman. However, this never occurred. In the mid 1990's, Plaintiff complained to Glen Davis, a White work leaderman at the time, now a supervisor, that Black employees were being promoted to work leaderman. Mr. Davis replied, "That's the thing, you have to be White." In 2000, Plaintiff again expressed interest in becoming a leaderman, and complained to Mr. Trawick when only one out of nine or 10 employees who had been promoted to work leaderman was Black. Mr. Trawick responded to Plaintiff's 2000 complaint by denying that Black employees were being discriminated against. The means used to determine that plaintiff would not be selected for a position, for which he was and is qualified, have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

22. Plaintiff has observed both that Black employees are not promoted in spite of their qualifications and seniority as well as the lack of qualifications of White employees who have

Plaintiff James Mingo's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00805-LG-RHW

6

been promoted, and, therefore, since 1990 Plaintiff has not applied for promotive positions for which he was qualified, and plaintiff has never been selected for promotion to any such position. Plaintiff has also observed that the availability of positions was not always publicized. The means used to determine that plaintiff would not be selected for a position, for which he was and is qualified, have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

23. Plaintiff has been demoted at times during which similarly situated White co-workers with fewer years of seniority were not demoted.  Plaintiff has been demoted under such circumstances in at least the following instances:

      a) On October 18, 1979, Plaintiff was demoted from work leaderman to welder;

      b) On May 1, 1980, Plaintiff was demoted from QA Inspector to leaderman;

      c) On October 18, 1982, Plaintiff was demoted from Supervisor to leaderman, along with a White Supervisor, Bob Begner who had less seniority.  While Begner was later re-promoted, Plaintiff was not, despite his seniority and above average Supervisory appraisals.

      d) On June 15, 1987, Plaintiff was demoted from leaderman to welder, when a white leaderman with less seniority was not demoted.

24. Plaintiff has been subjected to racial job tracking that assigns Black employees at NGSS at a disproportionate rate as compared to White employees to the most undesirable, dirtiest, and dangerous employment environments in the workplace.   Plaintiff has been assigned to the Hull Department since 1974, which is known to be one of the dirtiest, most dangerous, and hazardous to worker's health of all the Departments at NGSS.  Plaintiff has observed that Black employees receive these types of assignments and are not allowed to reject them while similarly situated White employees are allowed to reject these assignments

25. Plaintiff has been retaliated against or suffered adverse consequences for opposing NGSS's discriminatory employment practices, in violation of Title VII and § 1981.  Such retaliation has occurred in at least the following instances:

Plaintiff James Mingo's Complaint for      7
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00805-LG-RHW

  a) On or about April 2006, following his return from a week's absence due to illness documented by a doctor according to NGSS rules, plaintiff received a warning notice for excessive absence that he alleges was issued in retaliation for his participation in this lawsuit. Similarly situated White employees, including Mike Gurley, Mike Fresno, Doug Welch and Keith Wood, who had all excessively been absent from work more frequently than Plaintiff without having experienced the adverse consequences that Plaintiff experienced.

 26. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to offensive racially derogatory writings, depictions, and/or graffiti on a constant basis in a number of places at NGSS, including the restrooms of the East Bank fab shop, and the restrooms in fab shop, panel shop, and shell shop of the West bank, from the beginning of his employment until approximately 2003. The graffiti has included references to the KKK, phrases such as "Nigger go home," and a drawing of a noose on a piece of paper found in a restroom. NGSS knows or should have known of the presence of offensive racially derogatory writings, depiction, and/or graffiti in its workplace, but has failed to take steps to prevent or correct promptly its occurrence. Plaintiff has observed that supervisors and foremen use the restrooms containing racially derogatory graffiti. Plaintiff did not complain to anyone at NGSS about the graffiti because it was well known by supervisors and foremen that the racially derogatory graffiti was prevalent in the restrooms, and because plaintiff believed it would be useless so to do, given the historical lack of sufficient response on the part of NGSS.

 27. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to White supervisory personnel and White non-supervisory employees using the term "nigger" or other racial epithets, on a constant basis in a number of places at NGSS. NGSS knows or should have known about use of the term "nigger" and other racial epithets by White supervisory personnel and White non-supervisory employees, but has failed to take steps to prevent or correct promptly its occurrence. Plaintiff has complained about being subjected to such offensive racial epithets, but the response has always been insufficient to

Plaintiff James Mingo's Complaint for                             8
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00805-LG-RHW

remedy the situation. Plaintiff has not complained about each and every instance of having heard this or other racial epithets because plaintiff believed it would be useless so to do given the historical lack of sufficient response on the part of NGSS. Such exposure includes the following instances:

  a) Plaintiff has heard racially derogatory remarks and harassment against Blacks in the East Bank fab shop. These remarks include a White employee telling a black employee, "You wouldn't be happy if I hung you with a brand new rope."

  b) In the early 1980's, when Plaintiff was a work leaderman, a black employee complained to Plaintiff that Lamar Robinson, a white Foreman, when discussing how Black employees were being transferred to the West Bank in disregard of their seniority said, "we can deal with niggers anyway we want."

28. Plaintiff has been subjected to a hostile work environment based on Plaintiff's race. The hostile work environment comprises and/or has culminated in the adverse treatment described in paragraphs 20 through 25, incorporated as though fully set forth herein.

29. Plaintiff has been subjected to a hostile work environment based on Plaintiff's race. Plaintiff has been and is aware of the fact of presence of offensive racially derogatory writings, depictions, and/or graffiti; ubiquitous use of the word "nigger" and other racist epithets; and nooses at NGSS.

30. Plaintiff has been subjected to a hostile work environment based on Plaintiff's race. Plaintiff has been and is aware of the fact that Black employees have not been provided equal opportunity with regard to upward job mobility.

31. The hostile work environment based on race to which Plaintiff has been exposed is of a continuing and ongoing nature and constitutes a continuing violation of Title VII and § 1981.

32. NGSS has failed to take steps to remedy and correct promptly the harassing behavior occurring in its workplace. NGSS has failed to promulgate, disseminate, and enforce adequately an anti-harassment policy and failed to provide sufficient training to its employees regarding same. NGSS has failed to respond sufficiently to complaints regarding the harassment as set

Plaintiff James Mingo's Complaint for 9
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00805-LG-RHW

forth in paragraphs 26 through 31, incorporated as though fully set forth herein.

## APPROPRIATENESS OF EQUITABLE RELIEF

33. Plaintiff will suffer irreparable injury if the declaratory and injunctive relief requested herein is not granted, because NGSS will make employment decisions on the basis of the discriminatory procedures and practices described herein or will not remediate the racially hostile work environment that exists in its workplace. If NGSS is not enjoined from engaging in discriminatory employment practices, plaintiff will be deprived of career opportunities, which plaintiff otherwise would have been able to pursue, but for NGSS's discriminatory employment practices.

34. No plain, adequate, or complete remedy at law is available to plaintiff. Monetary relief cannot adequately compensate the loss of promotional opportunities, experience, and careers with NGSS. Similarly, monetary relief cannot adequately compensate the continued subjection to a racially hostile work environment.

35. Unless restrained by order of this Court, NGSS will continue to pursue policies and practices, which are the same as, or similar to those alleged above.

## FIRST CLAIM FOR RELIEF

36. Plaintiff refers to and incorporates by reference the allegations contained in paragraphs 1 through 32 and further alleges for a first claim for relief as follows:

37. Defendant has intentionally failed to provide plaintiff equal employment opportunities by discriminating against plaintiff on the basis of race with regard to treatment and promotions at NGSS. NGSS's unequal treatment of plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates plaintiff's right to be free from such discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*.

## SECOND CLAIM FOR RELIEF

38. Plaintiff refers to and incorporates by reference the allegations contained in

Plaintiff James Mingo's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00805-LG-RHW

10

paragraphs 1 through 32 and further alleges for a second claim for relief as follows:

39. Defendant has intentionally failed to provide plaintiff equal employment opportunities by discriminating against plaintiff on the basis of race with regard to treatment and promotions at NGSS. NGSS's unequal treatment of plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates plaintiff's right to be free from such discrimination under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

### THE APPROPRIATENESS OF COMPENSATORY AND PUNITIVE DAMAGES

40. Defendant NGSS has caused plaintiff emotional distress and mental anguish as a proximate result of its illegal practices, and plaintiff is entitled to compensatory damages pursuant to the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

41. Similarly, defendant NGSS was aware that its actions with regard to plaintiff were in violation of federal statutes prohibiting discrimination on the basis of race, and therefore, plaintiff is entitled to punitive damages.

### PRAYER

WHEREFORE, plaintiff prays that this Court:

a) Declare pursuant to 28 U.S.C. §§ 2201 & 2202 the employment practices set forth in paragraphs 17 through 32 to be unlawful and in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* and the Civil Rights Acts of 1866, as amended, 42 U.S.C. § 1981;

b) Adjudge, decree, and declare that the practices of NGSS complained of herein are violative of the rights secured to plaintiff by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981;

c) Issue a preliminary and permanent injunction enjoining NGSS, its agents, successors, employees, attorneys, and those acting in concert with it from engaging in each of the unlawful practices set forth in paragraphs 17 through 32 and from continuing other practices found to be in violation of applicable law;

Plaintiff James Mingo's Complaint for  11
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00805-LG-RHW

d) Direct NGSS to take such affirmative steps as are necessary to ensure that the effects of its unlawful employment practices are eliminated;

e) Enter a permanent mandatory injunction requiring that NGSS adopt employment practices in conformity with the requirements of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981;

f) Require that NGSS submit a comprehensive plan detailing how it plans to ensure fair and equitable job advancement opportunities for Black employees. The plan should also outline steps to be taken to ensure that jobs available remain open until the posting period has expired;

g) Require that NGSS institute a policy that affords equal opportunities for training and development. The policy should include the requirement that such training opportunities must be announced to the entire workforce as well as a procedure consisting of a rotation scheme and other procedures to ensure that training for job advancement is afforded to all those who are interested;

h) Grant equitable relief, including, but not limited to, back pay, sick pay, vacation pay, disability benefits, and seniority rights to plaintiff;

i) Grant such punitive, general, and special damages as proved at trial;

j) Award plaintiff the costs and litigation expenses of this action and reasonable attorneys' fees as provided for in section 706(k) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(k), and the Civil Rights Attorneys Fees Award Act of 1976, as amended, 42 U.S.C. § 1988; and

k) Grant such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff hereby demands a trial by jury.

Dated: September 29, 2006                                    SANDRA JARIBU HILL, Esq.

Plaintiff James Mingo's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00805-LG-RHW

12

          Mississippi Workers' Center for
            Human Rights


          WILLIAM C. MCNEILL, III, Esq.
          The Legal Aid Society-Employment
            Law Center

          Counsel for Plaintiffs


      By:  /s/ William C. McNeill, III
          WILLIAM C. McNEILL, III, Esq.


William C. McNeill, III, Esq., MS Bar No. 42867, *Pro Hac Vice*
Denise M. Hulett, Esq., MS Bar No. 44672, *Pro Hac Vice*
Shelley A. Gregory, Esq., MS Bar No. 43443, *Pro Hac Vice*
The Legal Aid Society – Employment Law Center
600 Harrison Street, Suite 120
San Francisco, California  94107
(415) 864-8848

Sandra Jaribu Hill, Esq., MS Bar No. 10684
Mississippi Workers Center for Human Rights
213 Main Street
P.O. Box 1223
Greenville, Mississippi  38702-1223
(662) 334-1122

Plaintiff James Mingo's Complaint for                        13
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00805-LG-RHW

**CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2006, I electronically filed the foregoing with the Clerk of the Court using the ECF System which sent notification of such filing to the following: Paul B. Eason; Maria Candace Burnette; Timothy W. Lindsay; Stephen A. Brandon.

I hereby certify that I have mailed by United States Postal Service the documents to the following non-ECF participants:

Tammi Liddell
3836 Prentiss St.
Moss Point, MS  39563

Willie B. Richmond
1608 Timberlane Road
Gautier, MS  39553

Edna M. Tubbs
P.O. Box 501
Escatawpa, MS  39552

  /s/ Laurel Kapros
Laurel Kapros

Plaintiff James Mingo's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00805-LG-RHW

14